**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONALD E. PRISTAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 17-1056 |
| | ) | Judge Nora Barry Fischer |
| BETTY ESPER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

On August 14, 2017, Plaintiff Donald E. Pristas ("Plaintiff"), acting *pro se*, initiated this civil action against the following defendants in both their individual and official capacities: Betty Esper ("Mayor Esper"), Mayor of Homestead; Jeffery Desimone ("Chief Desimone"), the Chief of the Homestead Police Department; Homestead Police Department Officers James A. Ilgenfritz ("Ilgenfritz"), Michael A. Kershiner ("Kershiner"), Jeffrey Luptak ("Luptak"), and Brian K. Meals ("Meals"); (collectively "Homestead Defendants"), and Judge Thomas R. Torkowsky ("Judge Torkowsky") (collectively "Defendants"). (Docket No. 1). In his Amended Complaint, Plaintiff advances claims under 42 U.S.C. § 1983 alleging violations of rights protected by the Fourth and Fourteenth Amendments of the United States Constitution. (Docket No. 11).

Presently pending before the Court is a motion to dismiss filed by Judge Torkowsky, (Docket No. 18), and a motion to dismiss/motion for partial summary judgment filed by Homestead Defendants, (Docket No. 22). Defendants' motions have been fully briefed, (Docket Nos. 19, 23, 30), and Plaintiff has been given an opportunity to respond, (Docket No. 27). Accordingly, the matter is ripe for consideration. For the reasons that follow, Judge Torkowsky's

motion is GRANTED and Homestead Defendants' motion is GRANTED, in part and DENIED, in part.

## II. FACTUAL BACKGROUND[1]

This case arises out of various interactions between Plaintiff and Defendants during 2015 and continuing through July of 2017. (Docket No. 11).

### A. August 14, 2015 Incident[2]

The first incident alleged in the amended complaint occurred at Plaintiff's residence ("residence") on August 14, 2015. By way of background, Plaintiff's wife ("wife") filed for divorce in state court in May of 2015. (Divorce Docket). Plaintiff admits sending a letter to his wife amidst divorce proceedings.[3] (Docket No. 27, at p. 8). In that letter, Plaintiff informed his wife that she had left her "stuff" at the residence, and also expressed his unwillingness to have any interactions with her "without a neutral third party, court appointed mediator, or law enforcement officer present[.]" (Docket No. 23-17). On August 14, 2015, the wife went to the residence with three other individuals and Officer Luptak of the Homestead Police Department to retrieve her property. (Docket No. 11, at p. 3).

---

[1]     As Plaintiff is proceeding *pro se*, the factual allegations in his complaint are to be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[2]     To contextualize the August 14, 2015 incident, the Court will take judicial notice of the pertinent entries in Plaintiff's state court divorce docket ("Divorce Docket") in case number FD-15-008011. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("[A] court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint" in deciding a motion to dismiss.); *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) ("[A] court may take judicial notice of a prior judicial opinion."). The Divorce Docket is accessible through the Allegheny County Department of Court Records website at https://dcr.alleghenycounty.us/Civil/LoginSearch.aspx.

[3]     Plaintiff's briefing maybe used "to clarify allegations in [his] complaint whose meaning is unclear." *Pegram v. Herdrich*, 530 U.S. 211, 230 n.10 (2000) (citing C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1364, pp. 480–481 (1990); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 428, n.8 (3d Cir. 1999); *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 911 (D.C. Cir. 1997); *Early v. Bankers Life & Cas. Co.*, 959 F.2d 75, 79 (7th Cir.1992)). Accordingly, the Court finds it appropriate to augment the facts alleged in the complaint with "concessions in [P]laintiff's response to the motion[s] to dismiss." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012).

Plaintiff alleges that his wife and the three individuals accompanying her were intruders ("alleged intruders"), and that Officer Luptak pushed him away and allowed the alleged intruders to enter the residence through the back door. (Docket No. 11, at p. 3). Plaintiff claims that he immediately asked everyone to leave, but Officer Luptak told Plaintiff that he was there to assist the alleged intruders in taking property that belonged to the wife. (*Id.*). Plaintiff asserts that he apprised Officer Luptak of the ongoing divorce proceedings and demanded to see either a warrant justifying entry into the residence, or a court order authorizing removal of any items from it. (*Id.* at 4). Officer Luptak, however, failed to produce either of those documents. (*Id.*).

Plaintiff claims that the alleged intruders emptied out the refrigerator and began to move it, breaking the automatic ice maker in the process. (*Id.* at 3). He avers that they ransacked the residence and took various items. (*Id.* at 3). Plaintiff alleges that he repeatedly exhorted Officer Luptak to stop the alleged intruders but to no avail. (*Id.* at 4). Plaintiff admits that a scuffle broke out when Plaintiff tried to stop one of the alleged intruders. (*Id.*). Officer Luptak allegedly pulled Plaintiff away from the fight, and threatened to tase and arrest him upon any further interference. (*Id.*).

Plaintiff claims that he left the residence to seek help from his son and returned to find several items missing, his kitchen flooding, and items being removed throughout the residence. (*Id.*). Plaintiff asserts that he asked Officer Luptak to stop the alleged intruders from robbing him but Officer Luptak told him that the alleged intruders were entitled to do so. (*Id.*). In the interim, Plaintiff's son arrived at the residence and purportedly asked Officer Luptak why the alleged intruders were being permitted to rob Plaintiff. (*Id.*). Plaintiff claims that Officer Luptak told his son the alleged intruders were there to obtain a stove, a refrigerator, and a microwave oven that belonged to the wife. (*Id.*). According to Plaintiff, upon realizing that the alleged intruders were

taking additional items, however, Officer Luptak admitted that a constable with a court order should have been present to facilitate the process. (*Id.*).

Thereafter, Officer Luptak purportedly called Officer Ilgenfritz into Plaintiff's residence for assistance. (*Id.*). Plaintiff claims that he immediately asked Officer Ilgenfritz to arrest the alleged intruders and Officer Luptak. (*Id.* at 5). Plaintiff alleges that after listening to the wife and inspecting the documents presented to him, Officer Ilgenfritz concluded Officer Luptak would never be arrested for what had transpired. (*Id.*). And Officer Luptak purportedly stated that Plaintiff was lucky for not being arrested for throwing blows at the alleged intruders. (*Id.*). Plaintiff claims the presence of a third officer at his residence whose identity is unknown to him. (*Id.* at 5–6).

Plaintiff alleges that the next day, and at other dates, he reached out to Chief Desimone and requested additional information about the August 14, 2015 incident. (*Id.*). However, according to Plaintiff, Chief Desimone neither made any arrests nor provided Plaintiff with the requested information. (*Id.*).

Plaintiff petitioned for a Protection from Abuse Order ("PFA") against his wife in the aftermath of the August 14, 2015 incident. (Divorce Docket). On August 17, 2015, a temporary PFA, excluding the wife from Plaintiff's residence, was granted. (*Id.*). On September 11, 2015, a state court judge held a hearing, dismissed Plaintiff's petition for a permanent PFA, and vacated the temporary PFA. (*Id.*). On October 5, 2015, Plaintiff's request for reconsideration of the PFA dismissal was denied in a written opinion. (*Id.*).

**B.    Summary Citations[4]**

---

[4]    The Court takes judicial notice of Plaintiff's state court traffic dockets ("Traffic Docket") and state court summary appeals dockets ("Appeals Docket") to ascertain Plaintiff's citations and their disposition because he has failed to include this information in his amended complaint. *See Turner Constr. Co. v. Independence Excavating, Inc.*, Civ. A. No. 16-337, 2016 WL 1408120, at \*1, n.2 (W.D. Pa. Apr. 11, 2016).

Plaintiff also complains that Homestead police officers violated his rights during a series of traffic stops for which he was issued summary citations. (Docket No. 11). The first of such incidents occurred on March 16, 2016, at which time Plaintiff claims Officer Ilgenfritz pulled over his vehicle, made derogatory statements to him, and ordered him out of the vehicle.[5] (*Id.* at 6–7). Officer Ilgenfritz allegedly searched the vehicle without Plaintiff's consent or a warrant, took articles from the vehicle, and threatened Plaintiff with "further inappropriate actions" and physical harm. (*Id.* at 7.). Plaintiff admits he was allowed to leave the scene, but later received a citation by mail. (*Id.*). The Court notes that the citation was for a summary offense—driving with a suspended or revoked license—in violation of 75 Pa. Cons. Stat. § 1543(a). (Traffic Docket: MJ-05215-TR-0000908-2016).[6] (Docket No. 23-6).

Plaintiff next complains that on March 30, 2016, Officer Kershiner pulled Plaintiff over while he was riding his motorcycle and advised him that the Pennsylvania Department of Transportation demanded return of the motorcycle's license plate. (Docket No. 11, at p. 7). Plaintiff allegedly complied by surrendering the license plate, but later received citations by mail which, he asserts, were incongruous with his interactions with Officer Kershiner. (*Id.*). The Court notes that Plaintiff received citations for the following summary offenses:

1. Operating a motorcycle without an eye-protective device in violation of 75 Pa. Cons. Stat. § 3525(b). (Traffic Docket: MJ-05215-TR-0001230-2016).[7]
2. Operating a vehicle without the required proof of financial responsibility in violation of 75 Pa. Cons. Stat. § 1786(f). (Traffic Docket: MJ-05215-TR-0001231-2016).[8]

---

[5] The Court notes that Plaintiff alleges that the traffic stop by Officer Ilgenfritz took place on March 15, 2016. However, the date listed on the state court traffic docket is March 16, 2016.

[6] *Available at*: https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0000908-2016

[7] *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001230-2016

[8] *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001231-2016

3. Driving with a suspended or revoked license in violation of 75 Pa. Cons. Stat. § 1543(a). (Traffic Docket: MJ-05215-TR-0001232-2016);[9] (Docket No. 23-9, at p. 3–4).
4. Failure to surrender license in violation of 75 Pa. Cons. Stat. § 1571(a)(4). (Traffic Docket: MJ-05215-TR-0001233-2016);[10] (Docket No. 23-9, at p. 1–2).
5. Displaying foreign license during suspension/revocation in violation of 75 Pa. Cons. Stat. §1573(a). (Traffic Docket: MJ-05215-TR-0001234-2016);[11] (Docket No. 23-9, at p. 5–6).

The citations from the March 16 and March 30 traffic stops were consolidated. (Docket No. 23-9). On June 7, 2016, a summary trial was held and Judge Torkowsky found Plaintiff guilty of all the charged summary offenses from both traffic stops. (*Id.*). Plaintiff appealed Judge Torkowsky's decision to the Court of Common Pleas. (*Id.*). On February 15, 2017, at the summary appeal hearing, Plaintiff pled guilty to operating his motorcycle without an eye-protective device, in violation of 75 Pa. Cons. Stat. § 3525(b), and the remaining summary offenses from both traffic stops were withdrawn. (Appeals Docket: CP-02-SA-0001207-2016[12]; (Docket No. 23-13, at p. 5–9). Plaintiff paid a modest fine, which included court costs and fees, of two hundred and eighty-eight dollars ($288). (Docket No. 23-13, at p. 5–9).

Plaintiff further contests a May 19, 2016 traffic stop initiated by Officer Meals who pulled over Plaintiff's truck. (Docket No. 11, at 9). Plaintiff claims that he presented his driver's license, owner's card, and proof of insurance to Officer Meals. (*Id.*). However, Officer Meals allegedly badgered Plaintiff for additional information, attempted to open the driver's side door, and told Plaintiff that the truck was stolen. (*Id.*). Plaintiff alleges that Officer Meals also inspected the

---

[9]     *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001232-2016
[10]     *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001233-2016
[11]     *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001234-2016
[12]     *Available at:* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-02-SA-0001207-2016

driver's license of the passenger riding with Plaintiff. (*Id.*). Plaintiff claims he was allowed to leave the scene upon surrendering control of the truck to the passenger, but later received citations by mail. (*Id.*). The Court notes that Plaintiff received citations for the following summary offenses:

1. Driving with a suspended or revoked license in violation of 75 Pa. Cons. Stat. § 1543(a). (Traffic Docket: MJ-05215-TR-0001476-2016);[13] (Docket No. 23-12, at p. 5–7).

2. Displaying foreign license during suspension/revocation in violation of 75 Pa. Cons. Stat. §1573(a). (Traffic Docket: MJ-05215-TR-0001477-2016);[14] (Docket No. 23-12, at p. 3–4).

3. Giving false information in violation of 75 Pa. Cons. Stat. §1573(a). (Traffic Docket: MJ-05215-TR-0001477-2016);[15] (Docket No. 23-12, at p. 1–2).

On August 16, 2016, a summary trial was held and Judge Torkowsky found Plaintiff guilty of all the charged summary offenses from the May 19, 2016 traffic stop. (Docket No. 23-12). In relation to this summary trial, Plaintiff asserts that Judge Torkowsky failed to recuse himself, treated him unfairly, found him guilty of charges when the author of the citations was not present, and refused to accept evidence that would have exonerated him. (Docket No. 11 at 9-10). Plaintiff appealed Judge Torkowsky's decision to the Court of Common Pleas. (*Id.* at 10). On February 15, 2017, at the summary appeal hearing, Plaintiff pled guilty to a lesser charge of driving without a license in violation of 75 Pa. Cons. Stat. § 1501(a), and the remaining summary offenses from the May 19, 2016 traffic stop were withdrawn. (Appeals Docket: CP-02-SA-0001741-2016);[16] (Docket No. 23-13, at p. 1–5).

---

[13] *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001476-2016
[14] *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001477-2016
[15] *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0001478-2016
[16] *Available at:* https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-02-SA-0001741-2016

Plaintiff also challenges a traffic stop on October 10, 2016, by Officer Meals. (Docket No. 11 at 10). Plaintiff maintains that Officer Meals did not tell him why he was pulled over and, instead, attempted to interrogate him. (*Id.*). Plaintiff claims that he told Officer Meals to direct any questions to his attorney. (*Id.*). Plaintiff alleges that Officer Meals left the scene after advising Plaintiff the tread on his tires was low, but later mailed out citations to him. (*Id.* at 10–11). The Court notes that Plaintiff was sent citations for the following summary offenses:

1. Displaying foreign license during suspension/revocation in violation of 75 Pa. Cons. Stat. §1573(a). (Traffic Docket: MJ-05215-TR-0002434-2016);[17] (Docket No. 23-15, at p. 4–6).
2. Driving with a suspended or revoked license in violation of 75 Pa. Cons. Stat. § 1543(a). (Traffic Docket: MJ-05215-TR-0002435-2016);[18] (Docket No. 23-15, at p. 1–3).

On October 18, 2016, a First Class Summons was issued to Plaintiff, followed by a Certified Summons issued on November 17, 2016. (Docket No. 23-15). Plaintiff claims he did not receive the aforementioned summons because they were mailed to an address not used by the Homestead Police in any of the prior citations issued to Plaintiff. (Docket No. 11, at p. 11). On July 13, 2017, a summary trial was held and the summary citations from the October 10, 2016 traffic stop were dismissed. (Docket No. 23-15).

### C. Confrontation with Mayor Esper

Plaintiff alleges that on or about March 17, 2016, he confronted Mayor Esper and asked her to "take grasps of the state of affairs being imposed upon Plaintiff by the [Homestead Police Department] officers[.]" (Docket No. 11, at p. 7). Plaintiff claims that Mayor Esper, however,

---

[17]    *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0002434-2016

[18]    *Available at:* https://ujsportal.pacourts.us/DocketSheets/MDJReport.ashx?docketNumber=MJ-05215-TR-0002435-2016

failed "to stop the continual harassments upon Plaintiff by persons, under her control of whom she has direct authority to lead." (*Id.* at 8).

### III.  PROCEDURAL BACKGROUND

Based on the foregoing, Plaintiff filed a *pro se* complaint under 42 U.S.C. § 1983 in this Court on August 14, 2017. (Docket No. 1). Following instructions by the Court, Plaintiff filed an amended complaint on August 30, 2017. (Docket No. 11). Plaintiff claims Defendants, while acting under color of law, deprived him of his constitutional rights, obstructed justice, caused property damages and monetary losses to him, and aided and abetted others in criminal acts against him. (Docket No. 11 at 3). Plaintiff seeks punitive damages for Defendants' derelictions of duty, the constant and continual profiling, harassment, and depravation of character which created extreme unrest, anxiety, mental anguish, and insecurity to Plaintiff. (*Id.*)

Judge Torkowsky filed a Rule 12(b)(6) motion to dismiss Plaintiff's § 1983 claim against him on September 12, 2017. (Docket No. 18). Homestead Defendants moved for dismissal under Rules 12(b)(5) and Rule 12(b)(6), and alternatively for summary judgment on October 2, 2017. (Docket No. 22). Plaintiff filed a brief in opposition to Defendants' motions on December 14, 2017. (Docket No. 27). Homestead Defendants filed a reply brief to Plaintiff's brief in opposition on December 21, 2017. (Docket No. 30).

### IV.  LEGAL STANDARDS

In their respective motions, Defendants invoke Rules 12(b)(5) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(5) addresses insufficient service of process and Rule 12(b)(6) addresses claims that fail to state a cognizable cause of action. Homestead Defendants alternatively request the Court to enter summary judgment in favor of Officer Ilgenfritz and Officer Meals as to all claims arising out of the March 16, May 19, and October 10, 2016 traffic stops. (Docket No.

22, at ¶¶ 19–31). In this Court's estimation, the Homestead Defendants' motion can readily be resolved in their favor under Rule 12(b)(6) and without reference to matters outside the pleadings. Accordingly, the Court will deny the Homestead Defendants' alternative motion for summary judgment, as moot.

### A.    Rule 12(b)(5)

Under Rule 12(b)(5), the court may dismiss a case for "insufficiency of service of process." Fed. R. Civ. P. 12(b)(5). "The party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993) (citing 4A Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1083 (1987)). That party must do so by a preponderance of the evidence using affidavits, depositions, and oral testimony. *State Farm Mut. Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg*, 543 F. Supp. 2d 424, 428 (E.D. Pa. 2008) (quoting *Villanova v. Solow*, No. CIV. A. 97–6684, 1998 WL 643686, at *1 (E.D. Pa. Sept. 18, 1998)).

### B.    Rule 12(b)(6)

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). While "accept[ing] all of the

complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210–11.

To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, ——U.S. ——, 135 S. Ct. 346, 347 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). An exception to this general rule is "undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court

may also consider "items subject to judicial notice," without converting the motion to dismiss into one for summary judgment. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2004)).[19]

## V.    DISCUSSION

Section 1983 provides private citizens a right of action against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws ....

42 U.S.C. § 1983. This statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a viable § 1983 claim, the plaintiff "must establish that []he was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). Because Defendants acted under color of state law, the Court's analysis focuses on whether Plaintiff has alleged deprivations of his constitutional rights. As Plaintiff claims that his rights were violated during a number of discreet incidents, the Court will analyze each incident, in turn.

### A.    August 14, 2015 Incident

Plaintiff alleges Officer Luptak, Officer Ilgenfritz, and Chief Desimone violated his Fourth Amendment and Fourteenth Amendment rights in relation to the August 14, 2015 incident at his

---

[19]    Homestead Defendants attached various documents to the brief in support of their motion to dismiss. *See* (Docket Nos. 23-1 through 23-16). In adjudicating their motion to dismiss, the Court finds it appropriate to consider only the Traffic Dockets, (Docket Nos. 23-6; 23-9; and 23-12), and the Appeals Dockets, (Docket No. 23-13). *See supra* n.4. These documents are subject to judicial notice, and are available through the Unified Judicial System of Pennsylvania Web Portal at: https://ujsportal.pacourts.us/. *See supra* n.6–18.

residence. (Docket No. 11 at 5-6). In their motion to dismiss, Homestead Defendants maintain that there were no such constitutional violations. (Docket No. 22, at ¶¶ 6–8, 13–18). Broadly construed, Plaintiff seems to be advancing three distinct claims: (1) Fourteenth Amendment: Failure to Prosecute; (2) Fourth Amendment: Search and Seizure; and (3) Fourteenth Amendment: Advance Notice and Opportunity to be Heard. (Docket No. 11). The Court now analyzes the sufficiency of Plaintiff's pleading as to each claim, starting with the Fourteenth Amendment, failure to prosecute.

### 1. *Fourteenth Amendment: Failure to Prosecute*

The Fourteenth Amendment forbids a state from depriving persons of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. "It is elementary that procedural due process is implicated only where someone has claimed that there has been a … deprivation of a legally protected liberty or property interest." *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir.1998) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972)).

Plaintiff seems to be alleging that his procedural due process rights were violated because: (1) Officer Luptak failed to arrest the alleged intruders; (2) Officer Ilgenfritz failed to arrest the alleged intruders and Officer Luptak; and (3) Chief Desimone failed to prosecute the alleged intruders and the officers. (Docket No. 11). However, Plaintiff's procedural due process claim is untenable for three reasons. First, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989). Second, "the benefit that [Plaintiff] may receive from having someone else arrested for [an alleged] crime generally does not trigger protections under the Due Process Clause[.]" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 768 (2005). Finally, Plaintiff as "a private citizen lacks a judicially

13

cognizable interest in the prosecution or nonprosecution of another[,]" because "he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (citations omitted). Plaintiff's procedural due process claim premised upon a failure to prosecute, therefore, necessarily fails because "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (citations omitted).

Plaintiff also alleges Chief Desimone violated his Fourteenth Amendment due process rights by failing to provide information he requested regarding the August 14, 2015 incident including witness statements, police reports, dispatch logs and like materials. (Docket No. 11 at 5-6). Plaintiff may be asserting a claim under the Pennsylvania Right-to-Know Law, 65 Pa. Cons. Stat. §§ 67.101, *et seq.* This claim, however, must be dismissed because "state courts provide the exclusive forum for litigating claims under that statute." *Degenes v. Mueller*, No. 11–916, 2012 WL 260038, at *3 (W.D. Pa. Jan. 27, 2012) (quoting *Hill v. Supervisor*, No. Civ. A. 97–4996, 1998 WL 175879, at *2 (E.D. Pa. Apr.8, 1998)); 65 Pa. Cons. Stat. § 67.1302(a) (an appeal from a decision of an "agency," as defined under the Right-to-Know Law, must be brought before the "court of common pleas for the county where the local agency is located").

Accordingly, Plaintiff's Fourteenth Amendment procedural due process claim, premised on a failure to prosecute, against Officer Luptak, Officer Ilgenfritz, and Chief Desimone, must be dismissed.

### 2. *Fourth Amendment: Unreasonable Search and Seizure*[20]

---

[20]    Although the Fourth Amendment's proscription against unreasonable searches and seizures technically applies only to the federal government, it has long been recognized that the Fourth Amendment's protections are incorporated into the Fourteenth Amendment's Due Process Clause and are thereby enforceable against state actors as well. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961) ("[T]he Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth [Amendment]").

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. For purposes of the Fourth Amendment, a "search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed," and a seizure occurs when "there is some meaningful interference with an individual's possessory interests in [his] property." *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). In the context of private repossessions, "the test [for state action] is whether the officer maintains neutrality or takes an active role in the repossession resulting in an unconstitutional deprivation." *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609-610 (3d Cir. 2011) (citing *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). "The mere presence of police at the scene of a private repossession does not, alone, constitute state action." *Harvey*, 635 F.3d at 610 (citing *Abbot*, 164 F.3d at 147). The relevant inquiry is "whether an officer affirmatively aided a repossession such that he can be said to have caused the constitutional deprivation." *Id.* "Such aid may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession." *Id.* (internal citations omitted). "When analyzing whether such an interference occurred, it is of no import that the officers did not take custody of plaintiff's property as long as the officers participated in the seizure." *See Hyman v. Capital One Auto Fin.*, No. CV 3:17-89, 2018 WL 557925, at *10 (W.D. Pa. Jan. 23, 2018).

In their motion to dismiss, Homestead Defendants invite the Court to accept findings of fact made by a state court judge in a written opinion dismissing Plaintiff's PFA petition. (Docket No. 22, at ¶¶ 14–16). However, when adjudicating a motion to dismiss a court may take "judicial notice of another court's opinion—not for the truth of the matter asserted, but for the existence of the opinion." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181

F.3d 410, 426 (3d Cir. 1999). Therefore, the Court declines Homestead Defendants' invitation to accept the findings of fact in the written opinion dismissing Plaintiff's PFA petition.

However, even if the Court considered the contents of the aforementioned judicial opinion, Homestead Defendants' arguments are unpersuasive. To this end, they erroneously assert that Plaintiff is precluded from claiming the entrance into the residence was in violation of his rights, because the findings of fact made at the PFA hearing are binding on him. (Docket Nos. 22 at ¶ 14; 23 at 3). This argument appears to be based on the doctrine of issue preclusion which "refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748–749 (2001). But, the issue being resolved at the PFA hearing was whether the wife placed Plaintiff in reasonable fear of imminent serious bodily injury. *See* 23 Pa. Cons. Stat. § 6102(a) (defining "abuse"). Whether the entrance into Plaintiff's residence was in violation of his Fourth Amendment rights was neither litigated and resolved, nor essential to the dismissal of Plaintiff's PFA petition. Therefore, Homestead Defendants' issue preclusion argument is not convincing to the Court.

With that said, it is this Court's opinion that there are two apparent deficiencies in Plaintiff's Fourth Amendment search and seizure claims against Officers Luptak and Ilgenfritz. First, while Plaintiff asserts that Officer Luptak and the intruders gained entry to the residence without a warrant or a court order, he admits sending a letter to his wife stating that she had left a few items behind, and that he did not wish to see her "without a neutral third party, court appointed mediator, or law enforcement officer present[.]" (Docket No. 23-17). Hence, it appears that Plaintiff's estranged wife went to the residence to collect *her* property with a police escort. As for

Officer Ilgenfritz, he was apparently summoned to the residence by Officer Luptak at which time he refused Plaintiff's requests to arrest the intruders. It is well established that consent is a valid exception to the warrant requirement, although such consent may be revoked by a resident on the property. *See Georgia v. Randolph*, 547 U.S. 103, 115 (2006) ("[T]he cooperative occupant's invitation adds nothing to the government's side to counter the force of an objecting individual's claim to security against the government's intrusion into his dwelling place."). Like other Fourth Amendment principles, consent is determined by looking to the totality of the circumstances. *See Adams v. Springmeyer*, 17 F. Supp. 3d 478, 500 (W.D. Pa. May 5, 2014) ("The existence or absence of consent presents a question of fact requiring consideration of the totality of the circumstances."). But, the facts of this incident remain unsettled because Plaintiff relies upon a contradictory version of events in his responsive brief which were not set forth in the Amended Complaint.[21] (*See* Docket No. 27).

Second, Plaintiff has not identified any of the items that were stolen, much less allege a possessory interest in them. (*See* Docket No. 11 at 3-5). Instead, he repeatedly refers to "items" or "things" being taken from various locations within his house throughout his Amended Complaint and references only what Officer Luptak purportedly told his son they were there to recover, i.e., a stove, a refrigerator, and a microwave oven. (*Id.*). Liberally construing Plaintiff's allegations, it is simply unclear what was actually taken from the residence by the "intruders" and if Plaintiff had a possessory interest in such property. (*See* Docket No. 11). Thus, he has failed to state a plausible claim upon which relief can be granted. *See Twombly*, 550 U.S. at 556 ("Factual allegations must be enough to raise a right to relief above a speculative level.").

---

[21]     For example, Plaintiff alleges in his complaint that Officer Luptak entered the residence first, pushed Plaintiff and permitted the intruders to enter the residence. (Docket No. 11). However, he has attached and incorporated an excerpt from the PFA hearing transcript which establishes that his then wife entered first, followed by her sister and brother, and finally, the police officers. (*See* Docket No. 27-2, at p. 1).

In light of the foregoing analysis, Homestead Defendants' motion to dismiss will be granted and the Fourth Amendment claims against Officers Luptak and Ilgenfritz will be dismissed. The United States Court of Appeals for the Third Circuit has held that District Courts should not dismiss a *pro se* complaint without allowing the plaintiff leave to amend unless amendment would be inequitable or futile. *See Kim v. I.R.S.*, 522 F. App'x 157 (3d Cir. 2013) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004)); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 113–14 (3d Cir.2002). Here, the Court will afford Plaintiff an opportunity to amend his complaint a second time to allege sufficient facts to demonstrate a right to relief under the Fourth Amendment as to the August 14, 2015 incident. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). Officers Luptak and Ilgenfritz may respond as they deem appropriate.[22]

### 3. *Fourteenth Amendment: Advance Notice and a Meaningful Opportunity to Be Heard*

As noted, Plaintiff has alleged that various items were taken from the residence in violation of his Fourteenth Amendment rights. (Docket No. 11). Liberally construing such allegations, he seems to be advancing a procedural due process claim based on "the right to advance notice ... and to a meaningful opportunity to be heard" to contest seizure of his property. *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998). Possessory interests in property undoubtedly trigger "the procedural safeguards of the Fourteenth Amendment." *Fuentes v. Shevin*, 407 U.S. 67, 87 (1972). However, to state this type of claim Plaintiff must allege that Officer Luptak and Ilgenfritz "deprived him of a property interest to which he had a legitimate claim of entitlement without the process he deserved." *Abbott*,164 F.3d at 146. This he has not done. As noted in the Court's discussion of

---

[22]    The Court notes that qualified immunity was not raised by the Defendants as to this motion and the Court declines to *sua sponte* evaluate any such claim at this time.

Plaintiff's Fourth Amendment claim, it is not clear whether the items that were taken from the residence—which the Plaintiff has not identified—belonged to him or his estranged wife. *See* § V.A.2, *supra*. Therefore, the Court will dismiss Plaintiff's Fourteenth Amendment procedural due process claim, without prejudice. However, as with his Fourth Amendment claim, the Court will afford Plaintiff another opportunity to properly plead his Fourteenth Amendment procedural due process claim, premised on denial of advance notice and opportunity to be heard, against Officers Luptak and Ilgenfritz, and for Homestead Defendants to respond as they deem appropriate. *See Alston*, 363 F.3d at 235.

### B. Mayor Esper

Homestead Defendants correctly argue that Plaintiff's § 1983 claim against Mayor Esper must be dismissed because Plaintiff has not pled Mayor Esper's personal involvement in the alleged deprivation of his constitutional rights. (Docket No. 22, at ¶¶ 3–5). Under § 1983, a defendant must be shown to have had personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Although personal involvement can be shown through allegations of personal direction, or of actual knowledge and acquiescence, such allegations must be made with appropriate particularity. *Id.* (citations omitted).

Plaintiff allegedly complained to Mayor Esper on March 17, 2016 about the way he was being treated by the Homestead Police Department, but Mayor Esper purportedly did not take any steps to remedy the situation. (*See* Docket No. 11). This is not sufficient to establish § 1983 liability against Mayor Esper. Plaintiff has not even attempted to allege Mayor Esper's personal involvement in the alleged wrongs, much less do it with the requisite particularity. *See Adams v. Springmeyer*, Civ. A. No. 11–790, 2012 WL 1865736, at *9 (W.D.Pa. May 22, 2012) (quoting

*Sykes v. Carroll*, No. 11–4576, 477 F. App'x 861 (3d Cir.2012)) ("'[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"); In addition, Plaintiff's alleged complaints to the Mayor took place seven months after the August 14, 2015 incident. *See e.g., McCann v. Borough of Magnolia*, 581 F. App'x 125, 126 (3d Cir. 2014) ("Because no claim against the police officer survives, and because he does not allege their direct involvement, McCann cannot maintain claims against the Borough, its Mayor, and the Chief of Police."). Accordingly, Plaintiff's § 1983 claim against Mayor Esper must be dismissed.

### C.    The March 16, May 19, and October 10, 2016 Traffic Stops

Plaintiff alleges the March 16, May 19, and October 10, 2016 traffic stops were conducted due to impermissible profiling and without probable cause. (Docket No. 11 at 6, 9, 10). Plaintiff appears to be advancing a claim of malicious prosecution against Officers Ilgenfritz and Meals for issuing the summary citations during these stops. (*Id.*). In moving to dismiss the claims arising out of the March 16 and May 19, 2016 traffic stops, Homestead Defendants point out that Plaintiff was not only found guilty of the charged summary offenses at a summary trial, but that Plaintiff also pled guilty to lesser charges on appeal. (Docket No. 23 at 16–17). They argue that due to his guilty pleas, Plaintiff is barred from pursuing a malicious prosecution claim for those traffic stops. (*Id.*). For the October 10, 2016 traffic stop, Homestead Defendants contend that probable cause has been established based on materials extraneous to the complaint.[23] (*Id.* at 17–18).

As a threshold matter in any § 1983 suit, the Court must "identify the specific constitutional right at issue." *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 920 (2017) (internal citation and quotation marks omitted). "[P]rosecution without probable cause is not, in and of itself, a

---

[23]    Homestead Defendants argue the existence of probable cause for the March 16 and May 19, 2016 traffic stops as well. Once again, the Court need not rely upon these materials to rule in Defendants' favor.

constitutional tort" actionable under § 1983. *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 (3d Cir. 1998) (citing *Albright v. Oliver*, 510 U.S. 266, 274 (1994)). There must instead be some "constitutional peg on which to hang such" a claim. *Albright*, 510 U.S. at 270 n.4. Typically, that "peg" is the Fourth Amendment, in which case a plaintiff must establish that he suffered a deprivation of his "liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Thus, in order to state a claim for malicious prosecution, a plaintiff must demonstrate: (1) defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) defendants acted maliciously or for a purpose other than bringing plaintiff to justice; and (5) plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005).

Here, Plaintiff has not alleged a deprivation of liberty consistent with the concept of seizure as a consequence of these traffic stops. In each instance, he was issued citations for summary offenses and never arrested or taken into custody. Moreover, he has neither alleged, nor is there any suggestion that any "onerous types of pretrial, non-custodial restrictions" were placed on him. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005); *cf. Pazicni v. Miller et al*, Civ. A. No. 17-117, 2017 WL 2418688, (W.D. Pa. Jun. 5, 2017) (same). Plaintiff was required to attend summary trials, but "merely attending trial does not amount to a seizure for Fourth Amendment purposes." *Black v. Montgomery Cnty.*, 835 F.3d 358, 367 (3d Cir. 2016). Therefore, to the extent it is based on the Fourth Amendment, Plaintiff's malicious prosecution claims arising out of the March 16, May 19, and October 10, 2016 traffic stops, against Officers Ilgenfritz and Meals cannot stand.

Additionally, as Homestead Defendants correctly argue, Plaintiff's malicious prosecution claims based on the March 16 and May 19, 2016 traffic stops are precluded by the favorable termination requirement of *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the United States Supreme Court held that where a favorable outcome in a § 1983 action would implicitly call into question the validity of a prior conviction, a plaintiff must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal authorized to make such determination …." *Id.* at 486–87.

Plaintiff alleges he was impermissibly profiled and his §1983 malicious prosecution claims seem to be premised on lack of probable cause for the March 16 and May 19 traffic stops. (Docket No. 11). A judgment in favor of Plaintiff on such claims would necessarily call into question his convictions from those traffic stops. *See Heck*, 512 U.S. at 486-87. Yet, Plaintiff has not demonstrated that his convictions from the March 16 and May 19 traffic stops have been invalidated by another court. (*See* Docket No. 11). Rather, the record shows that Plaintiff was found guilty of the charged summary offenses from the March 16 and May 19 traffic stops and, after appealing, he pled guilty to lesser charges. Thus, Plaintiff's malicious prosecution claims are barred by *Heck's* favorable termination requirement because they are "predicated on an underlying criminal proceeding which terminated in a manner not indicative of the [Plaintiff's] innocence …." *Kossler v. Crisanti*, 564 F.3d 181, 187 (3d Cir. 2009).

Apart from the malicious prosecution claim, Plaintiff seems to be advancing two additional claims based on the March 16, 2016 traffic stop. (Docket No. 11). First, Plaintiff asserts that Officer Ilgenfritz threatened to physically harm him during the March 16 traffic stop. (Docket No. 11 at 7). However, "verbal abuse does not give rise to a constitutional violation under § 1983." *Begnoche v. DeRose*, 676 F. App'x 117, 121–22 (3d Cir. 2017) (citing *Wyatt v. Fletcher*, 718 F.3d

496, 504 (5th Cir. 2013); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973)). Second, Plaintiff also alleges violations of his Fourteenth Amendment Due Process rights based on Officer Ilgenfritz's failure to appear at the summary trial for the March 16 traffic stop. (Docket No. 11 at 7). However, as already noted, that citation was for a summary offense and the Pennsylvania Rules of Criminal Procedure do not require the law enforcement officer who issued a citation to be present at trial in summary cases. *See* PA. R. CRIM. P. 454(B) ("in all summary cases arising under the Vehicle Code or local traffic ordinances, the law enforcement officer observing the defendant's alleged offense may, but shall not be required to, appear and testify against the defendant."). Because Plaintiff received the proper due process, any claimed Fourteenth Amendment procedural due process violations premised on Officer Ilgenfritz's absence at the summary trial for the March 16, 2016 traffic stop are meritless.

Accordingly, Plaintiff's §1983 claims against Officers Ilgenfritz and Meals for the March 16, May 19, and October 10, 2016 traffic stops must be dismissed.

### D.     Officer Kershiner

Homestead Defendants claim Officer Kershiner was never served with the complaint or the amended complaint and argue that Plaintiff's claim against Officer Kershiner arising from a March 30, 2016 traffic stop must be dismissed for insufficient service of process. (Docket No. 22 at ¶ 12). Under Rule 12(b)(5) of the Federal Rules of Civil Procedure, a complaint may be dismissed for insufficient service of process. FED. R. CIV. P. 12(b)(5). The Federal Rules of Civil Procedure draw a distinction between service of process for individuals and service of process for local and state governments. *See* FED. R. CIV. P. 4(e) and 4(j). Plaintiff sued Officer Kershiner both individually and in his official capacity as an officer for the Homestead Police Department.

Therefore, the Court will examine whether Plaintiff effectuated proper service on Officer Kershiner under either Rule 4(e) or 4(j).

Federal Rule of Civil Procedure 4(e) covers service of process for individuals and provides two alternatives for a plaintiff to effect proper service of process. *See* FED. R. CIV. P. 4(e). The first permits a plaintiff to (1) deliver a copy of the summons and the complaint to the individual personally; (2) leave a copy of each with someone of suitable age and discretion who resides at the individual's dwelling or usual place of abode; or (3) deliver a copy to an agent authorized by appointment or by law to receive service of process. FED. R. CIV. P. 4(e)(2). Alternatively, for purposes of this lawsuit, valid service could be effected upon the individual defendants by any method authorized under Pennsylvania law. *See* FED. R. CIV. P. 4(e)(1). This would include having the sheriff hand a copy of the summons and complaint to the defendant, the defendant's agent, or the person in charge of the defendant's residence, office, or usual place of business. PA. R. C. P. 400, 402.

Similarly, Federal Rule of Civil Procedure 4(j) provides two avenues for a plaintiff to effect proper service of process on a local government entity such as the Homestead Police Department. *See* Fed. R. Civ. P. 4(j). One way is to deliver a copy of the summons and the complaint to the entity's chief executive officer. Fed. R. Civ. P. 4(j)(2)(A). Alternatively, plaintiff may effectuate valid service as prescribed by state law. *See* Fed. R. Civ. P. 4(j)(2)(B). Under Pennsylvania law, process is served upon a political subdivision, such as the Homestead Police Department, by handing the relevant copies to:

> (1) an agent duly authorized by the political subdivision to receive service of process, or
> (2) the person in charge at the office of the defendant, or
> (3) the mayor, or the president, chairman, secretary or clerk of the tax levying body thereof, and in counties where there is no tax

levying body, the chairman or clerk of the board of county commissioners.

Pa. R. C. P. 422(b).

Service of the summons and the complaint must be made within 90 days after the complaint is filed. Fed. R. Civ. P. 4(m). Unless service is waived or is made by a U.S. Marshal, "proof of service [must] be made to the court ... by the server's affidavit." Fed. R. Civ. P. 4(l).

In this case, a proof of service form was filed with the Court on August 17, 2017. (Docket No. 4). In that filing, the process server represented receiving the summons for Officer Kershiner on August 14, 2017, and personally serving it on him. (*Id*. at 1). Attached to the proof of service form is a certified mail receipt indicating that a large envelope was mailed to Officer Kershiner at the address of the Homestead Police Department by the U.S. Postal Service on August 14, 2017. (*Id*. at 2). Homestead Defendants assert that Officer Kershiner resigned from the Homestead Police Department effective February 27, 2017, (Docket No. 22, at ¶ 11), which is supported with an affidavit submitted by Chief Desimone. (Docket No. 22-1). Plaintiff's response that he was not notified as to "who was still on or had resigned from the police force[,]" (Docket No. 27, at p. 4), is wholly inadequate given it is Plaintiff's burden to demonstrate the propriety of service by a preponderance of the evidence. *See Grand Entm't*., 988 F.2d at 488. In sum, there is no evidence before the Court that Officer Kershiner has either been properly served, or has waived service.

Since Plaintiff has not shown good cause for his failure to effect timely service, the Court has discretion to either dismiss the complaint without prejudice, or extend the time for service. *See* Fed. R. Civ. P. 4(m); *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1306 ("[A] district court may in its discretion still dismiss the case, even after considering that ... the refiling of an action is barred"). Plaintiff's malicious prosecution claim against Officer Kershiner, however, necessarily fails for the same reasons as set forth in the Court's discussion of Plaintiff's March 16,

and May 19, 2016 traffic stops, i.e., (1) he was never deprived of liberty consistent with the concept of seizure as a result of the traffic stop, and (2) he cannot establish the favorable termination element for a malicious prosecution claim. *See* § V.C., *supra*. Therefore, the Court will not extend time for service. Accordingly, Plaintiff's §1983 claim in reference to the March 30, 2016 traffic stop by Officer Kershiner must be dismissed under rule 12(b)(5) for insufficient service of process.

## E. Judge Torkowsky

Plaintiff's allegations against Judge Torkowsky arise from the actions he took in his judicial capacity. (Docket No. 11 at 9-10). In moving to dismiss, Judge Torkowsky correctly argues that Plaintiff's §1983 claim is barred both by Eleventh Amendment Immunity, and under the doctrine of absolute judicial immunity. (Docket No. 18 at ¶¶ 5,7).

### 1. Eleventh Amendment Immunity

The Eleventh Amendment protects States and their agencies and departments from suit in federal court. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *Estate of Logano v. Bergen Co. Prosecutor's Office*, 769 F.3d. 850, 857 (3d Cir. 2014) ("Sovereign immunity extends to state agencies and state officers, 'as long as the state is the real party in interest.'") (quoting *Fitchik v. N.J. Transit Rail Operations*, 873 F.2d 655, 659 (3d Cir.1989)). A suit against a state official in his or her official capacity is deemed a suit against the state because the state is the real party in interest. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment, therefore, bars § 1983 suits against state officials in their official capacities. *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Pennsylvania's state courts are entitled to Eleventh Amendment immunity because they "are part of the Commonwealth government[.]" *Haybarger v. Lawrence Cnty. Adult Prob. and Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citing *Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 240–41 (3d Cir. 2005)). Judge Torkowsky is a judicial officer of Allegheny County Magisterial District Court 05-2-15, which is an entity of the Unified Judicial System of Pennsylvania under 42 Pa. C.S. § 301(9). *See* (Docket Nos. 11, at p. 2; 18, at ¶ 2). As part of the Commonwealth of Pennsylvania's government, Allegheny County Magisterial District Court 05-2-15 is immune from suit under the Eleventh Amendment. Therefore, Plaintiff's § 1983 claim against Judge Torkowsky, in his official capacity, must be dismissed.

### 2. *Absolute Judicial Immunity*

"A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). Here, all of the allegations against Judge Torkowsky related to actions he took as a judge. And there is no indication that Judge Torkowsky acted in the absence of jurisdiction. Accordingly, Plaintiff's § 1983 claim against Judge Torkowsky, in his individual capacity, must also be dismissed.

In sum, Judge Torkowsky is immune from suit in his official capacity by Eleventh Amendment immunity, and in his personal capacity under the doctrine of absolute judicial immunity. Accordingly, Plaintiff's § 1983 claims against Judge Torkowsky must be dismissed.

### F. Leave to Amend

The Court's last inquiry is whether the dismissal of Plaintiff's claims is with or without prejudice and whether to grant him leave to amend his claims. As noted above, leave to amend is appropriate unless an amendment would be inequitable or futile. *See Alston*, 363 F.3d at 235. For the reasons previously expressed, the Court will grant leave for Plaintiff to amend his claims against Officers Luptak and Ilgenfritz under the Fourth and Fourteenth Amendment arising from the August 14, 2015 incident as the Court of Appeals has recognized causes of action against officers who involve themselves in a private repossession. *See e.g., Abbott*, 164 F.3d at 146; *Harvey*, 635 F.3d at 609-610. However, the Court finds that leave to amend the remainder of Plaintiff's claims would be futile and will deny same. *See Alston*, 363 F.3d at 235. To summarize, Judge Torkowsky is clearly immune from suits challenging his judicial decisions; Officer Kershiner was never served with process; Mayor Esper had no personal involvement in the alleged actions; Chief Desimone and the officers cannot be held liable for failing to arrest and prosecute individuals; and, the traffic stop incidents involving the remaining officers are not actionable.

## VI.  CONCLUSION

For all the foregoing reasons Judge Torkowsky's motion to dismiss (Docket No. 18) is GRANTED and Homestead Defendants' motion to dismiss and partial motion for summary judgment (Docket No. 22) is GRANTED, in part and DENIED, in part, as the motion to dismiss is granted and the motion for summary judgment is denied, as moot. All § 1983 claims against Judge Torkowsky, Mayor Esper, Chief Desimone, Officer Kershiner, and Officer Meals are DISMISSED, with prejudice. The § 1983 claims against Officer Ilgenfritz arising from the traffic stop and those against Officers Luptak and Ilgenfritz for failure to prosecute are likewise DISMISSED, with prejudice. However, Plaintiff's § 1983 search and seizure and procedural due process claims against Officers Luptak and Ilgenfritz arising from the August 14, 2015 incident

are DISMISSED without prejudice and he is granted leave to amend these particular claims. An appropriate Order follows.

*/s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated:   March 22, 2018

cc/ecf:   All counsel of record.

        Donald E. Pristas
        448 Victoria Street
        West Mifflin, PA 15122
        (regular and certified mail)